# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| SECUREWORKS, INC., | ) |
| | ) |
|     Plaintiff, | ) |
| | ) C.A. No. 05-538 (JJF) |
|     v. | ) |
| | ) |
| INTERNETTRUST FOUNDATION | ) |
| f/k/a SECURE NETWORX CORP., | ) |
| | ) |
|     Defendant. | ) |

**DEFENDANT'S ANSWERING BRIEF IN OPPOSITION TO
PLAINTIFF'S MOTION FOR CONTEMPT, SANCTIONS,
AND TO ENFORCE THE JUDGMENT ON CONSENT**

Michael W. Arrington (DE ID #3603)
PARKOWSKI, GUERKE & SWAYZE P.A.
800 King Street, Suite 203
Wilmington, DE 19801
Telephone: (302) 594-3333
Facsimile: (302) 654-3033
marrington@pgslegal.com
*Attorneys for Defendant Internettrust Foundation*

Dated: October 27, 2006

**TABLE OF CONTENTS**

INTRODUCTION..................................................................................................................2

STATEMENT OF FACTS

    I.     THE PARTIES................................................................................................4

    II.    DEFENDANT'S ALLEGED IMPROPER ACTIONS....................................5

ARGUMENT

    I.    DEFENDANT DID NOT BREACH THE SETTLEMENT AGREEMENT OR JUDGMENT...................................................................................................7

    II.   SANCTIONS...................................................................................................11

CONCLUSION..................................................................................................................13

1

Defendant Internettrust Foundation ("Defendant" or "Internettrust") by and through undersigned counsel hereby files this Answering Brief In Response to Plaintiff's Motion For Contempt, Sanctions, And To Enforce The Judgment On Consent, arguing that the Defendant was not in breach of the Settlement Agreement (Plaintiff's Ex. A) between the parties, and was not in violation of the Judgment on Consent (D.I. 21).

## INTRODUCTION

Defendant disputes the Plaintiff's unfounded allegations of extortion, harassment, and the filing of "meritless proceedings against Plaintiff in the United States Patent and Trademark Office ("USPTO") before the Trademark Trial and Appeal Board ("TTAB").

In fact, it was the Plaintiff who began the institution of trademark proceedings against Defendant in 2002. The Opposition to the mark SECURE NETWORX proceeded for over two years until Plaintiff finally withdrew its Opposition.

Defendant's in fact instituted two successful Oppositions against Plaintiff's alleged marks EXPONENTIAL INTELLIGENCE and SECUREWORKS.

Defendant was not sanctioned for being dilatory on Plaintiff's motion. In fact, Plaintiff's motions for sanctions were not successful, and Defendant was found to have acted in good faith by the TTAB twice. In other words, Plaintiff's previous allegations of bad faith conduct by Defendant in seeking sanctions have been proven unfounded.

Many of Plaintiff's complaints over answers to discovery questions by Defendant were held to be unfounded by the TTAB. In contrast, Plaintiff refused to answer every single interrogatory and document request sent by Defendant, including many requests that were the same as those sent by Plaintiff to Defendant.

2

**STATEMENT OF FACTS**

**I.   THE PARTIES**

Defendant advised Plaintiff in July 2005 that it had requested an assignment of the mark SECURE NETWORX to the Canadian extra-provincial company. This assignment was requested well in advance of the Settlement Agreement between the parties. The request was visible on the USPTO website as early as July, 2005.

Defendant was required to represent in the Settlement Agreement that it was the owner of the entire interest to the mark. Defendant was further required to make this same representation to the USPTO in requesting that the mark be voluntarily cancelled.

Defendant filed the voluntary surrender of the mark SECURE NETWORX as required by the Settlement Agreement. Several months later, Defendant advised the USPTO, upon learning of the effective transfer of interest having occurred prior to the surrender, that it appeared that it was not the owner of the entire interest at the time of the request.

Plaintiff's Motion is based on three letters sent to the USPTO in an attempt to resolve the issue of the ownership of the mark at issue. In correspondence on August 11, 2006 to Keith Sharkin, counsel for Plaintiff, Defendant advised that Plaintiff could contact it regarding a subsequent surrender by the Canadian extra-provincial company (which was not required by the Settlement Agreement). This discussion occurred in September 2006, after Defendant received Plaintiff's Motion. At that time Plaintiff advised that a separate registration jacket was not required for a subsequent surrender, but that further fees would be payable to the USPTO. Defendant agreed to send a subsequent surrender and to pay the required fees.

**II.       DEFENDANT'S ALLEGED IMPROPER ACTION**

Defendant did send the required voluntary surrender of United States Registration No. 2,939,034 for the registered mark SECURE NETWORX for cancellation with prejudice.

The fact remains that the mark at issue, SECURE NETWORX, remains cancelled. At Plaintiff's request, Defendant subsequently wrote to the USPTO confirming that the mark shall remain cancelled. This letter was sent after the USPTO advised Defendant that it considered the voluntary surrender to come from the Canadian extra-provincial company, and not the Delaware company, or Defendant.

As stated in Defendant's letter to the USPTO, the explanation provided by the USPTO conflicts with Plaintiff's position on its motion, that no transfer occurred. (See Declaration of Adam Joseph Ezer, at Appendix 1).

It is respectfully submitted that it was reasonable for Defendant to believe that the assignment was valid, once it learned that it had in fact occurred instantly on July 26, 2005. In fact, Plaintiff, in sending a proposed agreement to settle their Motion, required separate signatures and seals for the Delaware company and the Canadian extra-provincial company.

Subsequent to the Settlement Agreement, Defendant never petitioned to cancel any of Plaintiff's marks including SECUREWORKS. Defendant wrote to Keith Sharkin, after receiving no reply to the email of August 11, 2006, that in the event it was acting in bad faith (and thus in breach of the Settlement Agreement), that a petition would be filed. Upon being contacted by Keith Sharkin and discussing the matters at issue, Defendant advised that it would not petition to cancel any of Plaintiff's marks.

5

A direct violation of the Judgment and breach of the Settlement Agreement may have occurred if either, a) the mark SECURE NETWORX was not eventually cancelled, or b) a petition was subsequently filed to cancel any of Plaintiff's marks.

In fact, the mark SECURE NETWORX is cancelled, and no subsequent petition has ever been filed. Further, Defendant has advised Plaintiff that it does not intend to petition for the cancellation of any of Defendant's marks. Defendant has also written to the USPTO confirming that the mark at issue, SECURE NETWORX, remain cancelled as the voluntary surrender has been taken by the Board to come from the Canadian company, and not Defendant, the Delaware corporation.

Plaintiff has brought motions for sanctions before the USPTO against Defendant, and has also alleged bad faith. No sanctions were ever entered against Defendant, and the allegations of bad faith were found to be without merit on at least two occasions.

The Declaration of Adam Joseph Ezer, President and Director of Defendant, Internettrust Foundation, sets forth the foregoing facts in Mr. Ezer's words. The Declaration and Exhibits thereto represent the Appendix to the Defendant's Answering Brief in Opposition to Plaintiff's Motion for Contempt, Sanctions, and to Enforce the Judgment on Consent.

# **ARGUMENT**

## I. DEFENDANT DID NOT BREACH THE SETTLEMENT AGREEMENT OR JUDGMENT, WARRANTING A FINDING OF CONTEMPT

The Defendant did not disobey an order of the Court. Defendant submitted a voluntary surrender of the mark SECURE NETWORX, stating that it was the "current owner of the entire right, title and interest in and to the above-captioned service mark registration, together with the goodwill of the business symbolized by and associated with that mark." (See Plaintiff's Ex. H).

Upon realizing that the transfer had occurred immediately in July, 2005, Defendant contacted the Board in March, 2006 to advise them that in fact the assignment of all rights and interest had occurred from Defendant to the Canadian company, extra-provincially registered in British Columbia. Defendant had advised Plaintiff of this intended assignment, after it was filed, and before the Settlement Agreement was signed.

In fact, the Board resolved the issue by stating that the surrender was taken to come from the Canadian company, apparently due to the Canadian address used.

Furthermore, while Plaintiff contends that no transfer ever occurred, the transfer stands on the USPTO records. Plaintiff has also, in settlement discussions over this motion, required that a Settlement Agreement be signed by Adam Ezer as the agent of Defendant, and as agent of the Canadian company.

Defendant did not attempt to reinstate the mark SECURE NETWORX to itself. Defendant ceased use of the mark as required by the Settlement Agreement, and simply advised the Board of what appeared to have been a mistaken misstatement, namely that it owned the mark at the time of the surrender.

The Settlement Agreement required that Defendant not petition to cancel Plaintiff's marks. Defendant has not done this. Defendant wrote an email to Plaintiff when it appeared their counsel was acting in bad faith. This matter was resolved when Plaintiff's counsel contacted Defendant, almost a month after Defendant wrote to Keith Sharkin.

The Settlement Agreement did not prevent Defendant from emailing counsel for Plaintiff, or from contacting counsel in relation to perceived breaches of the Settlement Agreement.

Plaintiff's motion is based on three letters and two emails sent by Defendant to the USPTO and Plaintiff's counsel.

Plaintiff's argument is that Defendant is in contempt for misrepresenting its ownership of SECURE NETWORX. However, Defendant advised counsel for Plaintiff that this transfer was being submitted, before the Settlement Agreement was signed. When Defendant learned that the transfer was effective immediately, before the surrender was signed, it did the proper thing, namely, advise the Board of what appeared to have been a mistaken representation.

Defendant did not seek to have the Canadian company take an action prohibited by it. Defendant sought to clarify that the surrender appeared to be invalid, and that the mark was owned by the Canadian company.

Plaintiff was advised by Defendant's President, Adam Ezer, to contact him if it required that the Canadian extra-provincial company submit a separate voluntary surrender, in the email that sparked this motion. Furthermore, Adam Ezer advised Keith

8

Sharkin, counsel for Plaintiff, that Defendant was prepared to pay the fee for this second surrender, and that Defendant did not have another original jacket to submit with the surrender.

The USPTO considered Defendant's concerns as valid, eventually stating that the surrender was taken to come from the Canadian extra-provincial company, and not Defendant. The mark is now dead. By clarifying what turned out to be accepted by the Board as a valid concern, namely that Defendant did not own the mark surrendered, Defendant did not directly violate the Judgment, nor did it willfully breach paragraph 2 of the Settlement Agreement.

Plaintiff has previously alleged bad faith against Defendant, and sought sanctions from the TTAB. Despite the fact that, at least twice, the TTAB found the allegations of bad faith of Plaintiff to be unfounded, and despite the fact that sanctions were never imposed against Defendant, Plaintiff casually alleges "four years" of bad faith actions by Defendant. It is respectfully submitted that Plaintiff's continued allegations of bad faith actions, when they have been found to be without merit, is representative of the continued unfounded allegations herein.

Plaintiff has alleged, amongst other things, "extortion" by Defendant, and frivolous proceedings before the TTAB. In fact, Plaintiff started the proceedings at the TTAB by opposing Defendant's mark. Two years later, Plaintiff finally surrendered, without prejudice, its application that Defendant opposed (for SECUREWORKS). Plaintiff also abandoned its application for the mark XPONENTIAL INTELLIGENCE, after Defendant opposed this mark.

The issues at hand concern the Defendant's actions after the Judgment on Consent and Settlement Agreement were signed. Yet, Plaintiff continues to revive claims of bad faith that were found to be unsubstantiated by the TTAB. They also complain about discovery responses in proceedings before the TTAB. With respect to discovery, if it is relevant, the fact is that Defendant supplied responses and supplementary responses under seal. Plaintiff, on the other hand, refused to answer every single one of Defendant's 28 Interrogatories and 32 Requests for Documents and Things. This was the case even though most of the requests were, *verbatim*, the same requests sent by Plaintiff to Defendant.

Plaintiff alleges, on the one hand, that Defendant willfully violated an Order of this Court, and on the other hand, states that even if Defendant was acting in good faith, this would not save Defendant from a finding of contempt.

Defendant's short correspondence to the USPTO and to Plaintiff's counsel was sent in good faith, and not in willful violation of either this Court's orders or the Settlement Agreement. Plaintiff relies on *Harris v. City of Philadelphia,* 47 F.3d 1311, 1326 (3d Cir. 1995) for the proposition that willfulness is not required to find contempt. In that case, the Court stated (at page 6) "The court's civil contempt power is discretionary, and where there is ground to doubt the wrongfulness of respondent's conduct, there should be no finding of contempt" (citations omitted). The Court further stated that "Ambiguities in an order "redound to the benefit of the person charged with contempt"" (citations omitted).

## II.     SANCTIONS

No coercion to require compliance with the Court's order is necessary. Defendant has confirmed with the USPTO, at Plaintiff's request, that the mark SECURE NETWORX is dead, and will not be reinstated. Defendant has also confirmed to Plaintiff's counsel that no petition to cancel will be filed. In fact, no petition to cancel was ever filed after the final Judgment on Consent or Settlement Agreement were signed.

Plaintiff has unnecessarily incurred legal expenses in prosecuting this motion. Defendant wrote to Plaintiff's counsel concerning the mark at issue on July 29, 2006. On August 28, 2006, the day before this motion was filed, Plaintiff's counsel emailed Adam Ezer, President of Defendant, with its Rule 7.1.1 Notice, requiring an immediate response to avoid the motion.

Plaintiff did not comply with the Settlement Agreement in sending its Notice. The Agreement states that all notices for Defendant are to be sent to its physical address in British Columbia. Furthermore, Plaintiff's counsel has previously sent emails to Defendant's hotmail address that were undeliverable. In seeking to enforce the Settlement Agreement, Defendant should at least comply with the Settlement Agreement with respect to Notices.

Plaintiff was only willing to avoid the Court's judgment on this motion, when they required payment of $25,000. Plaintiff refused to provide a single bill stating costs and disbursements actually incurred.

The USPTO has cancelled the mark SECURE NETWORX, and Defendant has confirmed that it is to remain cancelled. No order directing the USPTO not to reinstate the mark is necessary. Furthermore, no order is necessary enjoining Defendant from

petitioning to cancel Plaintiff's marks, or seeking to oppose any application of Plaintiff, or interfering "in any manner with Plaintiff's business".

The orders sought rely on Plaintiff's allegations of "continuing bad faith actions towards Plaintiff". Defendant has already borne the expense and associated disruption with successfully defending Plaintiff's previous allegations of bad faith. Having succeeded in contesting these allegations, Plaintiff should not be heard to revive these allegations again, about actions before the TTAB when the TTAB has dismissed these allegations as unfounded. In fact, it is the Plaintiff that is continuing with its unfounded allegations against Defendant.

**CONCLUSION**

For all of the foregoing reasons, Defendant respectfully requests that the Court deny Plaintiff's motion and enter an order awarding Defendant its attorneys' fees and costs associated with the defense of this motion, as well as any other monetary sanctions that this Court deems just and proper.

                         PARKOWSKI, GUERKE & SWAYZE, P.A.

                      /s/Michael W. Arrington
By:   Michael W. Arrington, Esquire (#3603)
       800 King Street, Suite 203
       Wilmington, DE 19801
       (302) 654-3300
       *Attorneys for Defendant Internettrust Foundation*

DATED: October 27, 2006